GENET v. PRESIDENT, ETC., OF DELAWARE & H. CANAL CO.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. COAL MINES—LEASE—CONSTRUCTION—CULM OR MINE WASTE—LIABILITY OF LESSEE.

A coal mine lease provided that the lessee should pay a fixed sum for every ton of clean, merchantable coal, exclusive of culm or mine waste which would pass through a half-inch mesh. *Held*, that though the lessee was not bound, under the contract, to pay for the culm or mine waste, if it did in fact take it it could raise no question of its merchantability, but must pay for it at the same rate agreed to be paid for the clean, merchantable coal.

2. SAME—ACTS CONSTITUTING A TAKING.

Defendant contracted to pay a fixed sum for every ton of clean, merchantable coal, exclusive of culm or mine waste, taken from plaintiff's mine, which would pass through a half-inch mesh. Acting under this contract, defendant took culm from plaintiff's mine, brought it to the surface on her land, and, after passing it through breakers, carried it over on its own land, and there retained it. *Held*, that the act of dominion thus exercised over the culm by defendant constituted such a taking thereof as would make it liable to pay therefor at the same price agreed to be paid for the clean, merchantable coal.

Appeal from judgment on report of referee.

Action by Augusta G. Genet against the president, etc., of the Delaware & Hudson Canal Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

George C. Genet, for appellant.
Frank E. Smith, for respondent.

PATTERSON, J. The subject-matter of this action has been so often stated in opinions of this and other courts, in actions involving the contract between the parties, that it is unnecessary to repeat what has been written concerning it. The plaintiff now appeals from a judgment in her favor rendered in one of her several actions upon the report of a referee; she claiming that, upon the evidence, she was entitled to a much larger judgment than that awarded her for the coal which passed through the half-inch mesh. Her right to the increase, she claims, depends primarily upon the construction to be given to the instrument out of the provisions of which the liability of the defendant to her arises, which instrument has been frequently before the courts of this state for construction. From the varying and contradictory judicial interpretations which have been given to that instrument by the courts, there has at last been evolved by the court of appeals a construction which, having been announced in 163 N. Y. 182, 57 N. E. 297, and reiterated in 167 N. Y. 608, 60 N. E. 1111, may now be regarded as settled. Under that construction, it is now definitely determined that, by the provision of the lease or instrument between the parties to this action, the defendant, the lessee, is required to pay for the coal that passed through a mesh of a half-inch square, if it chose to take such coal, at the same rate at which it was required to pay for other coal

taken under the contract. The provisions of the lease or instrument were that the defendant should pay a fixed sum for every ton of clean, merchantable coal, exclusive of culm or mine waste that would pass through a mesh of a half-inch square; and the ultimate decision of the court of appeals is that, if the defendant chose to take the culm or mine waste, it must pay for it, also, as clean, merchantable coal, at the rate or royalty to be paid for other coal than that denominated "culm or mine waste." The court of last resort also held that the lessee was not obliged to take this coal, but had the right to take it if it chose, and, so doing, no question can arise as to its merchantability. By taking it the defendant determined for itself the question of cleanness and merchantability. This culm, or what was considered at the time of the making of the contract mine waste, the court of appeals, in substance, holds, comes under the same conditions of the contract as the other and larger coal which the defendant took from the plaintiff's mine, and the same obligation to pay applies to this culm as applies to the other coal. That which passed through a half-inch mesh was referred to generically as "culm," but, when it came to be utilized by the defendant, was specifically subdivided into what is known as "pea coal," "buckwheat coal," and "bird's-eye coal," after which there remained a residue still, known as "culm," in contradistinction to the three descriptions of coal named. In this case the referee has allowed a recovery for pea and buckwheat coal taken by the defendant, but he has not allowed for bird's-eye or culm. He reported that the defendant has not taken, sold, or disposed of any culm from culm heaps situated upon land described in the complaint or otherwise, which said culm was the property of the plaintiff. He also found and reported that the defendant has not taken, consumed, sold, or disposed of any culm from any culm heaps situated upon the land of the defendant, the culm of which culm heaps came from the lands of the plaintiff. As we read the evidence in this case, this conclusion of the referee is erroneous. It is shown that the defendant took from the culm which belonged to the plaintiff certain quantities, which it used in its steam engines, and for that it should pay the plaintiff, whether in the form of bird's-eye coal or what is called "culm"; and, under the evidence, it is liable to the plaintiff for all her culm which it took, by putting it out of her reach and beyond her power to repossess herself of. It would seem that there were two sources from which this culm was taken,—one, from the plaintiff's mine, carried through a tunnel, and deposited on the defendant's land, and there intermingled with culm which belonged to the defendant. We think that this situation created by the defendant is not now before us for consideration, upon the present record, as the exceptions filed to the report of the referee were not broad enough to cover a demand for it. But it is established by the evidence that a large amount of culm was taken from the plaintiff's mine, brought to the surface on her land, passed through the breakers there, and was carried by the defendant from the plaintiff's land over bridges (which the defendant erected for the very purpose) to the defendant's own land, and was there kept and retained by it. This, in our judgment, con-

stitutes a taking and appropriation of the plaintiff's culm, and she cannot enter upon the defendant's land and repossess herself of it without being a trespasser; and, indeed, after such dominion and authority have been exercised over it by the defendant, she is not called upon to take steps to repossess herself of it.

Under the construction given by the court of appeals to the contract, the plaintiff being entitled to recover at the rate of royalties named in that contract, and not the market value of the coal (as we formerly supposed to be the rule), the referee should have found for the plaintiff for the additional amounts to which she is entitled by reason of the taking and appropriation of the culm, as we have above stated. We have not the data before us by which these amounts can be ascertained in a satisfactory manner; and therefore the judgment appealed from must be reversed, and a new trial ordered before another referee, with costs to the plaintiff to abide the event. All concur.